UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-61949-SINGHAL/VALLE

FRANCINE DAMATO,

     Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of
Social Security Administration,

     Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 23) (together, "the Motions"). U.S. District Judge Raag Singhal has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 4).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 24), Plaintiff's Reply (ECF No. 25), and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed as Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

## I.   <u>PROCEDURAL HISTORY</u>

On June 2, 2017, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., alleging disability beginning on June 25, 2016.  (R. 16).[2]  Plaintiff's application was denied initially and again upon reconsideration.  (R. 186-91, 193-204).  Plaintiff requested a hearing, which was held on May 2, 2019, before ALJ Jose Perez-Gonzalez (the "First Hearing").  (R. 66-103, 224, 246).  Plaintiff appeared with counsel and testified at the hearing.  (R. 86-98).  A Vocational Expert ("VE") and two medical experts also testified.  (R. 72-84, 99-101).  The ALJ continued the hearing to obtain post-hearing consultative examinations of Plaintiff.  (R. 97, 101).  Thereafter, ALJ Gregory M. Wilson conducted a second administrative hearing (the "Second Hearing").  (R. 39-64).  Plaintiff, appearing with counsel, and a VE testified at the Second Hearing.  (R. 45-60).  On April 23, 2020, ALJ Wilson issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 16-30).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-10); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.   <u>STANDARD OF REVIEW</u>

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal

---

[2] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 14, 15).

standards in making his determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB) and § 1382 (standard for SSI). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)    Is the person presently unemployed?
(2)    Is the person's impairment severe?
(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4)    Is the person unable to perform his or her former occupation?
(5)    Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4) (evaluation process for DIB), 416.920(a)(4) (evaluation process for SSI). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239.  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform.  *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.  *Id.*  The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id.* at 1239-40.

### III.   <u>THE RECORD</u>

#### A.   **Plaintiff's Testimony and Relevant Background**

Plaintiff, born in 1978, was 38 years old on the alleged onset date and 42 years old at the time of the ALJ's Decision.  (R. 22, 45, 313).  Plaintiff completed two years of college, and was a certified cosmetologist, EMT, and paramedic.  (R. 87).  Plaintiff last worked as a paramedic. (R. 87, 336).  Plaintiff's impairments included borderline personality disorder, posttraumatic stress disorder ("PTSD"), depression, anxiety, diabetes Type II, Hashimoto's disease (a thyroid disorder), and back pain.  (R. 72, 94).

 Plaintiff testified that she stopped working in 2016 primarily because of depression and anxiety.  (R. 46-49).  More specifically, Plaintiff testified that she suffers from severe depression and anxiety, has panic attacks when she leaves the house, cannot interact with others, showers infrequently, and her focus and concentration are impaired.  (R. 47-50, 94-96).  Plaintiff's physical limitations include back pain (which limits her ability to walk, stand, and sit for long periods), diabetes (which causes painful neuropathy in her legs), and Hashimoto's thyroiditis.  (R. 51, 54).

Regarding activities of daily living, Plaintiff testified that she drives her daughter to and from school, attends mandatory school conferences, manages her daughter's school needs, and microwaves dinner.  (R. 48, 50, 53).  Plaintiff is able to manage her funds and pay bills, use Facebook, text, email, use the internet, and do scrapbooking.  (R. 50-55).

### B.      Vocational Experts' Testimony

At the Second Hearing, the VE categorized Plaintiff's past relevant work as a paramedic (a very heavy job with an SVP of 6).[3]  (R. 57).  The ALJ questioned the VE whether a hypothetical individual of Plaintiff's age, education, and previous work experience, who could lift 20 pounds occasionally and 10 pounds frequently, and stand/walk/sit for six hours in an eight-hour day, could perform Plaintiff's past relevant work.  *Id*.  In addition, the individual could frequently use ramps and stairs and frequently balance, stoop, kneel, crouch, crawl, handle, finger, and feel, but could never use ropes, ladders, and scaffolds.  *Id*.  The individual should avoid concentrated exposure to vibration and hazards, but could perform simple, routine, repetitive work with a reasoning level up to 3 on a sustained basis for eight hours a day, five days a week, in two-hour increments with normal breaks.  *Id*.  The individual was further limited to dealing with things rather than people, no contact with the public, and only occasional contact with coworkers.  *Id*.  Lastly, the individual was limited to occasional decision-making and occasional changes in the work setting.[4]  *Id*. According to the VE, such an individual could not perform Plaintiff's past relevant work as a paramedic.  (R. 58).

---

[3] At the Second Hearing, the VE testified that only Plaintiff's past work as a paramedic constituted substantially gainful activity.  (R. 56-57).

[4] This hypothetical became the basis for the ALJ's RFC determination.  *See* (R. 21).

The ALJ next asked the VE whether there were other jobs in the national economy that a hypothetical individual with Plaintiff's RFC could perform.  *Id*.  In response, the VE testified that such an individual could work as a marker, ticketer, and housekeeping cleaner, all unskilled light jobs, with an SVP of 2.  *Id*.

The ALJ then posed a second hypothetical to the VE, asking whether an individual with the above limitations could perform any work in the national economy if that individual needed to be absent from the workstation daily, and the duration of those absences were left to the individual's discretion.  (R. 58-59).  The VE testified that such an individual could not perform any work without a special accommodation from the employer.  (R. 59).  The VE added that if such an individual took frequent breaks more than 10% of the time or was absent more than once a month, that individual would be reprimanded and eventually fired.  *Id*.

Next, Plaintiff's counsel asked the VE whether the individual in the ALJ's first hypothetical would be able to work if that individual was additionally unable to interact appropriately with the public, supervisors, or coworkers and would not be able to respond appropriately to usual work situations and/or changes in a routine work setting.  (R. 59-60).  In response, the VE testified that an individual who could not interact appropriately with supervisors could not work.  (R. 60).  However, if the individual only had difficulty changing routines, she might still be able to do simple, routine jobs.[5]  *Id*.

---

[5] If, however, the individual could not handle even simple, routine jobs, then that individual could not work.  *Id*.

### C.    Medical Records

The medical record in this case is extensive, spanning more than 2,500 pages.  In brief, between July 2016 and November 2019, Plaintiff saw more than a dozen medical providers for treatment of her various impairments.[6]  Only the relevant medical records are discussed below as they pertain to Plaintiff's allegations of error.

## IV.    THE ALJ'S DECISION

On April 23, 2020, after reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the [Act] from June 25, 2016, through the date of this decision."  (R. 17, 30).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 25, 2016, the alleged onset date.  (R. 19).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: Hashimoto's disease (thyroid), diabetes, insomnia, lumbar spine disorder, depression, anxiety, personality disorder, and PTSD.  *Id.*

---

[6] For treatment of Hashimoto's disease and thyroid, Plaintiff saw: (i) Dr. Ikna Krysiak (July 2016) (Ex. 4F); (ii) Dr. Arnaldo Villafranca (Sept. 2017 – Aug. 2018) (Exs. 16F, 29F); and (iii) Dr. Karen Prida (also for back pain) (June – Dec. 2017) (Exs. 7F, 9F, 12F, 36F).

For mental health treatment, Plaintiff saw: (i) ARNP Dominique Alsafeer or PA Jamie Rubin (Dec. 2016 – Aug. 2017) (Exs. 10F, 24F); (ii) Dr. Laura Cohen (August 2017) (Ex. 14 F); (iii) Dr. Antonio DeFilippo (Sept. 2017 – Nov. 2018, April – Oct. 2019) (Exs. 17F, 30F, 41F, 52F); (iv) Social Worker Sally Noel (May – Nov. 2018) (Ex. 26F); and (v) Dr. Jessica Reed (Sept. – Nov. 2019) (Ex. 56F).

For treatment of back pain, Plaintiff saw: (i) Dr. Kanwal Chickering (May 2017) (Ex. 5F); (ii) Dr. Stacey Kaciuban (June 2017) (Ex. 6F); (iii) Dr. Lita Calagua (July 2017) (Ex. 39F); (iv) Dr. Kevin Cairns (Aug. – Nov. 2017) (Exs. 15F, 40F); and (v) Dr. Jackson George Cohen (Jan. 2018) (Ex. 25F).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings. *Id.*

At Step 4, the ALJ determined that Plaintiff has the RFC to perform light work, with certain exertional and non-exertional limitations. (R. 21). More specifically, Plaintiff: (i) could never climb ropes, ladders, or scaffolds; (ii) could frequently use ramps and stairs; (iii) could frequently balance, stoop, kneel, crouch, crawl, handle, finger, and feel; (iv) must avoid concentrated exposure to vibration and hazards; (v) was limited to simple, routine repetitive work with a reasoning level up to and including three over an eight-hour day in two-hour increments with normal breaks; (vi) was limited to dealing with things rather than people, occasional decision-making, and occasional changes in work setting; and (vii) could have occasional contact with coworkers but no contact with the public. *Id.* The ALJ concluded that Plaintiff was not able to perform her past relevant work and proceeded to Step 5. (R. 28).

At Step 5, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as marker, ticketer, and housekeeper cleaner, all light work with an SVP of 2. (R. 29). Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 30).

## V.   <u>DISCUSSION</u>

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's treating psychiatrist Dr. Antonio DeFilippo. (ECF No. 20 at 2, 4-9). Next, Plaintiff argues that the ALJ erred in evaluating the opinion of psychological consultative examiner Dr. Randy Levine. *Id.* at 2, 9-12. Lastly, Plaintiff argues that the ALJ's RFC assessment and hypothetical to the VE were flawed because the ALJ failed to include any limitations resulting from Plaintiff's Hashimoto's disease. *Id.* at 2, 12-15. As discussed below,

the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence.  Accordingly, the ALJ's Decision should be affirmed.

### A.    The ALJ Properly Assessed Dr. DeFilippo's Opinion

Social Security regulations require the ALJ to consider and evaluate every medical opinion received in determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 416.927(c), 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  Medical opinions are statements "from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding her ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace).  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2017).[7]

Moreover, in weighing medical opinions for claims filed after March 27, 2017, the treating source rule has been eliminated.[8]  *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020).  Under the revised regulations, while a medical source's "treatment relationship" with a claimant remains a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is no longer entitled to controlling weight or

---

[7] For claims filed before March 27, 2017, the regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1) (2016).

[8] For claims filed before March 27, 2017, the treating source rule generally required ALJs to give "controlling weight" to a treating source's opinion absent good cause. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

deferential treatment.  *Ramos*, 2021 WL 5746358, at *9; *Bonilla,* 2020 WL 9048787, at *4.
Instead, the persuasiveness of *any* medical source's opinion (whether treating, examining, or
reviewer) depends on whether the opinion is: (i) supported by objective medical evidence and the
source's explanation of his opinion; and (ii) is consistent with other evidence in the medical record.
20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2) (2017). These factors, referred to as
"supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[9]
20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2017); *Bonilla,* 2020 WL 9048787, at *4.  Other
factors include treatment relationship with the claimant, area of specialization, and "other factors
that tend to support or contradict a medical opinion or prior administrative medical finding."
20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5) (2017).  In addition, while the ALJ must
articulate how he considered medical opinions from all medical sources, the ALJ need only explain
his consideration of the supportability and consistency factors.  *Bonilla,* 2020 WL 9048787, at *5;
*see also* 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)
(2017).

Here, Dr. DeFilippo treated Plaintiff approximately eleven times from September 2017
through October 2019 for depression and anxiety.  *See generally* (Exs. 17F, 30F, 41F, 52F).
Relevant here, on June 18, 2019, Dr. DeFilippo completed a Medical Assessment of Ability to do
Work-Related Activities (Mental) (the "Mental Health Assessment" or "June 2019 Opinion")
(Exhibit 48F) (R. 2270-73).  In the Mental Health Assessment, Dr. DeFilippo opined that Plaintiff
had "poor or [no]" ability to: (i) relate to coworkers; (ii) deal with public; (iii) deal with work

---

[9] "Supportability" refers to the relevance of "the objective medical evidence and supporting
explanations presented by a medical source to support his or her" opinion.  20 C.F.R.
§§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" looks to whether "the evidence from other
medical sources and nonmedical sources in the claim" are consistent with the medical opinions
presented.  20 C.F.R. §§ 404.1520c(2), 416.920c(c)(2).

stress; (iv) function independently; (v) maintain attention/concentration; (vi) understand, remember, and carry out complex job instructions; (vii) understand, remember and carry out detailed, but not complex job instructions; (viii) behave in an emotionally stable manner; and (ix) relate predictably in social settings. (R. 2270-71). Dr. DeFilippo further opined that Plaintiff had "fair" ability to: (i) follow work rules; (ii) use judgment; (iii) interact with supervisor; and (iv) understand, remember, and carry out simple job instructions. *Id*. Dr. DeFilippo concluded that Plaintiff's ability to work was limited by her "ongoing severe mood issues, especially PTSD symptoms, [and that] she would have significant issues working in the public and under stressful situations." (R. 2272).

The ALJ found Dr. DeFilippo's June 2019 Opinion unpersuasive. (R. 25-26). The ALJ explained that Dr. DeFilippo's June 2019 Opinion was "inconsistent with the claimant's ADLs and mental longitudinal history." (R. 25). The ALJ further noted that Dr. DeFilippo's June 2019 Opinion was also "inconsistent with the [medical evidence of record]," which reflected Plaintiff's mostly normal mental status examinations, including fair to normal attention and concentration, and reflecting that Plaintiff was "well-groomed, pleasant, cooperative, friendly, alert, oriented and in no acute distress and [with] generally . . . intact judgment and insight as well as linear thought process, grossly intact memory, no delusions, and no perceptual disturbances. (See Exs. 1F-56F)." *Id*. The ALJ also considered the various psychological and physical consultative examinations Plaintiff had undergone. *Id*. at 26.

Plaintiff argues that the ALJ erred in assessing Dr. DeFilippo's June 2019 Opinion by not articulating his evaluation of the "supportability" and "consistency" factors. (ECF No. 20 at 6). Plaintiff's argument, however, is unpersuasive. For the reasons discussed below, the undersigned

finds that the ALJ's Decision adequately addressed the supportability and consistency of Dr. DeFilippo's June 2019 Opinion, and that substantial evidence supports the ALJ's Decision.

With reference to Plaintiff's activities of daily living, the ALJ noted that Plaintiff was able to "drive a car, pay bills, take her daughter to and from school, use texting, shop online, use google to research, and do scrapbooking."  (R. 25); *see also* (R. 23-24) (noting that "the breadth and scope" of Plaintiff's activities of daily living "support a finding that she has the significant combination of limitations reflected in [the ALJ's Decision], but do not support a finding that she is precluded from performing work within the parameters reflected in the [RFC])."[10]

In addition, the ALJ accurately summarized Plaintiff's mental longitudinal history, and concluded that:

> the mental longitudinal history indicated the claimant had normal memory, behavior and psychological symptoms were negative, two of three delayed recall on one occasion and three of three delayed recall on another occasion (Exhibits 56F, 52F, 51F, 50F, 41F, 30F, 18F, 17F and 14F). The mental longitudinal history also revealed that the claimant was alert and oriented times three, in no acute distress, mood and affect was normal, judgment and insight was intact, attention concentration and focus was normal, and on other occasions that the claimant's attention and concentration was fair (Exhibits 56F, 51F, 50F, 49F, 45F, 41F, 35F, 31F, 30F, 18F and 17F).  In addition, the mental longitudinal history indicated the

---

[10]  Plaintiff argues that her ADLs are consistent with Dr. DeFilippo's finding of severe mental limitations affecting her ability to work.  (ECF No. 20 at 6-9).  In support of this argument, Plaintiff relies on *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021) and *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245 (11th Cir. 2019).  (ECF No. 20 at 6-9).  But these cases are inapposite. Here, unlike in *Simon* and *Schink*, Plaintiff's ADLs (i.e., driving, caring for her disabled daughter, attending school functions, paying bills, and using the internet to communicate through different social media platforms) reflect on her ability to function in a work environment.  *Cf. Simon*, 7 F.4th at 1107-08 ("[The plaintiff's] ability to solve basic math problems says little to nothing about his ability to perform simple tasks on a full-time basis[.]"); *Schink*, 935 F.3d at 1266 ("So that [the plaintiff] was able to feed and clothe himself, walk a dog, and watch television tells us very little about whether he suffered from a severe mental impairment or about his ability to function in a stressful work setting.").  Moreover, even disregarding Plaintiff's ADLs, Plaintiff's medical record belies Dr. DeFilippo's disabling June 2019 Opinion and Plaintiff's allegations of incapacitating mental limitations.  *See, e.g.,* (R. 446, 450, 454, 457, 487, 497).

claimant had no anxiety or depression,[11] she was cooperative, friendly, pleasant, calm and well groomed (Exhibits 52F, 50F, 49F, 41F, 30F, 18F and 17F).

(R. 23).

Against this backdrop, the ALJ correctly concluded that Dr. DeFilippo's June 2019 Opinion is not supported by his own treatment records (supportability) and is inconsistent with the medical record as a whole (consistency).  Regarding supportability, Dr. DeFilippo's treatment records generally reflect that although Plaintiff was depressed or anxious, Plaintiff was well-dressed and groomed, calm, cooperative, alert and oriented, with fair attention and fair concentration.[12]  *See, e.g.,* (R. 812, 2163-64, 2587, 2589) (September 2017, April 2019, and September 2019, October 2019 treatment notes); *see also* (R.  812, 908, 916, 918, 920, 923) (Dr. DeFilippo's treatment notes reflecting mostly normal mental status examinations during visits in 9/21/17, 10/12/17, 11/16/17, 11/27/18, 2/27/18) (Exs. 17F, 30F, 41F, 52F).

As to consistency, the ALJ found that Dr. DeFilippo's June 2019 Opinion was "inconsistent with the [medical evidence of record], which indicates generally that her attention and concentration ranges from fair to normal; describes her generally as well-groomed, pleasant, cooperative, friendly, alert, oriented and in no acute distress; and reflects generally she has intact judgment and insight as well as linear thought process, grossly intact memory, no delusions, and

---

[11]  The ALJ's blanket statement that "the claimant had no anxiety or depression," (R. 23), is inaccurate.  Indeed, the ALJ fully acknowledged Plaintiff's anxiety and depression throughout his Decision and found them to be severe impairments.  *See* (R. 19, 22-24, 26, 28).  The ALJ's statement, however, is correct in that Plaintiff denied depression or anxiety at several appointments.  (R. 658, 664, 668).

[12]  Following the death of Plaintiff's brother in February 2018, Dr. DeFilippo's February 2018, March 2018, and May 2018 treatment notes indicated Plaintiff's decreased attention and concentration.  (R. 912, 914, 916).  However, Dr. DeFilippo noted Plaintiff's return to fair attention and concentration in his treatment notes from July 2018, November 2018, April 2019, and October 2019 (R. 908, 910, 2163-64, 2587).

no perceptual disturbances."[13]  (R. 25).  For example, 2015 treatment notes from Tenet Florida

Physician Services (Dr. Capezzuti) consistently reflect that Plaintiff was oriented to time, place,

person and situation, with normal mood, affect, insight and judgment.  (R. 446, 450, 454, 457)

(treatment notes dated 7/13/15, 7/20/15, 12/10/15, and 12/15/15) (Ex. 2F).  Similarly, 2016

treatment notes from Florida Medical Center (Dr. Ikna Krysiak) reflect that Plaintiff was oriented

to time, place, person, and situation.  (R. 487, 497) (treatment notes for 1/26/16, 7/12/16) (Ex. 3F).

Treatment notes for 2017 from Florida Medical Center and Memorial Healthcare System

Emergency Room also reflect that Plaintiff was oriented, with pleasant behavior, normal mood

and affect, and normal speech.  (R. 513, 520, 527, 554, 555, 571, 572) (treatment notes for 2/28/17,

4/7/17, 5/31/17, 6/13/17) (Exs. 5F, 6F).  Similarly, although treatment notes from Compass Health

Systems (ARNP Alsafeer or PA Rubin) reflect Plaintiff's reports of anxiety and depressed mood,

they also reflect that Plaintiff was stable on her medications, was calm and cooperative, alert and

fully oriented, with intact recent and remote memory, concentration within normal limits, and good

insight and judgment.  (R. 656, 658-59, 662, 664-65, 668, 671, 855) (treatment notes from

12/13/16, 1/10/17, 2/20/17, 3/28/17, 5/24/17, 7/10/17, 8/9/17) (Exs. 10F, 23F, 24F).

The ALJ also considered Plaintiff's consultative evaluations in 2014, 2017, and 2019.

(R. 26).  For example, in August 2014, psychological consultative examiner Dr. Mary Lopez

diagnosed Plaintiff with major depressive disorder, panic disorder with agoraphobia, and attention

deficit hyperactivity disorder.  (R. 433-38) (Ex. 1F).  Nonetheless, Plaintiff could comprehend and

carry out simple 3-stage commands, had intact auditory attention, intact verbal concept and

abstract reasoning skills, fair judgment, good insight, and adequate computational skills and

---

[13] This examination predates Plaintiff's alleged onset date of June 25, 2016.  Nonetheless, the
undersigned reviewed it in evaluating the consistency of Plaintiff's mental health symptoms.

information recall.  (R. 437).  Thus, Dr. Lopez opined that "given [Plaintiff's] age, diagnosis, and current level of functioning, [Plaintiff's] prognosis for psychotherapy is fair."  (R. 26, 438).  The ALJ also considered the August 2017 consultative examination by psychologist Dr. Laura Cohen. (R. 26, 742-46).  Despite Plaintiff's diagnosis of depression, anxiety and PTSD, Dr. Cohen found that Plaintiff's immediate memory was fair, remote memory was good, judgment was poor to fair, and fund of knowledge, ability to do calculations, and abstract reasoning were all fair.  (R. 743). Dr. Cohen opined that Plaintiff's prognosis was fair.  (R. 744).  Importantly, as the ALJ correctly stated, neither Dr. Lopez nor Dr. Cohen noted any specific mental functional limitations.[14]  (R. 26).

Against this legal and factual backdrop, the undersigned finds that the ALJ sufficiently articulated his evaluation of all medical sources, and explained how Dr. DeFilippo's June 2019 Opinion was not supported by his own treatment notes and was inconsistent with the medical record.  82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2017).  In weighing medical opinions, the ALJ is not required to use particular words or formulations as long as the ALJ's Decision makes clear that the ALJ applied the proper legal standards and substantial evidence supports his decision.  Such is the case here.  *See Gelbart v. Berryhill*, No. 17-CV-61361, 2018 WL 4573145, at *3 (S.D. Fla. Sept. 25, 2018) (concluding ALJ properly evaluated regulatory factors where factors are evident in the ALJ's analysis, although not specifically enumerated and discussed by name).  Accordingly, the undersigned finds that the ALJ applied the proper legal standards and substantial evidence supports his decision.  *See*, *e.g.*, *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x. 641, 644 (11th Cir. 2021) (affirming ALJ's

---

[14] The ALJ also considered the August 2019 orthopedic consultative examination by Dr. Hector Meruelo.  (R. 26) (Ex. 4F).  In contrast to Dr. DeFilippo's June 2019 disabling opinion, Dr. Meruelo noted that Plaintiff appeared clinically euthyroid and was fully oriented and pleasant. (R. 27).  Dr. Levine's May 2019 psychological examination is discussed in Section B, below.

reliance on ADLs when assessing symptoms); *McGriff v. Comm'r, Soc. Sec.*, 654 F. App'x. 469, 471 (11th Cir. 2016) (finding ALJ was entitled to give less weight to treating physician's opinion inconsistent with the medical record, his own treatment notes, and the examination notes of another physician); *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x. 830, 833 (11th Cir. 2011) (concluding ALJ may properly discount physician's opinion about plaintiff's limitations when contradicted by longitudinal history).  Lastly, even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth,* 703 F.2d at 1239. A court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel,* 631 F.3d at 1178 (citation omitted).

### B.    The ALJ Properly Evaluated Dr. Levine's Opinion

Next, Plaintiff argues that the ALJ failed to evaluate the "supportability" and "consistency" factors in evaluating the opinion of consultative examiner Dr. Randy Levine.  (ECF No. 20 at 11-12).  In considering Dr. Levine's May 2019 consultative examination report (Exhibit 47F), the ALJ wrote:

> [I]n the most recent psychological [consultative examination] of record . . . [Plaintiff] reported she was last in counseling from the Chrysalis Center six months ago.  [Plaintiff] endorsed various symptoms corresponding with the severe mental impairments found in this decision. Nevertheless, she drove herself to the [consultative examination], arrived 15 minutes early, and said she was currently in a romantic relationship.  In addition, on [mental status examination] she displayed abnormal mood and affect (i.e., sad, depressed, anxious), low average IQ, and concentration difficulties; but normal gait, casual attire, and reality-based, well-organized and goal-directed thinking.   Dr. Levine diagnosed her with major depression, severe; PTSD; and borderline personality disorder; but opined she could manage her own funds. Dr. Levine also suggested poor concentration; moderate to marked limits in ability to understand, remember and carry out instructions; and marked limits in ability to interact with others (Ex. 47F, pp. 2-8).

(R. 26).

Although the ALJ did not use the words "supportability" and "consistency," the ALJ's Decision makes clear that the ALJ considered these factors in considering the persuasiveness of Dr. Levine's opinion.  *Gelbart,* 2018 WL 4573145, at *3.   For example, in terms of "supportability," the ALJ noted that while Dr. Levine found that Plaintiff had "poor concentration; moderate to marked limits in ability to understand, remember and carry out instructions; and marked limits in ability to interact with others," Dr. Levine also noted that Plaintiff drove herself to the appointment, arrived 15 minutes early, was neatly dressed, alert, cooperative, and oriented with reality-based, well-organized, and goal-oriented thinking.  (R. 26).  As for "consistency," the ALJ referred to numerous medical records that Plaintiff was "repeatedly . . . noted to have normal attention, concentration, and focus or fair attention and concentration."[15]  Thus, the ALJ concluded that Dr. Levine's opinion was only "somewhat persuasive." (R. 26).   The ALJ wrote:

> After careful study, the undersigned found [Dr. Levine's] opinion somewhat persuasive in terms of the claimant having repeatedly been noted to have normal attention, concentration, and focus or fair attention and concentration (Exs. 17F, 30F, 41F, and 50F-51F) and in reaching the conclusions reflected in this decision the undersigned considered reports that the claimant had decreased attention and concentration at times (see Exs. 30F and 47F).  However, the undersigned does not find the claimant is more than moderately limited in any of the paragraph B criteria as accounted by the significant combination of mental limits reflected in the  . . . [RFC] finding, as those limits are most consistent with and best supported by the totality of the evidence of record, including the [Plaintiff's] ADLs.

(R. 26).

As discussed above in Section A, the ALJ reviewed and accurately summarized thousands of pages of medical records, which reflected—despite Plaintiff's depression and anxiety—mostly

---

[15] These records include, for example: (i) mental status examinations by Dr. DeFilippo in September 2017, October 2017, February 2018, July 2018, and November 2018 (Exs. 17F, 30F); (ii) April 2019 treatment note of Dr. DeFilippo (Ex. 41F); (iii) May 2019 and July 2019 visits to the Memorial Healthcare System (Ex. 50F); and (iv) November 2019 visit with Dr. Verma (Ex. 51F).  (R. 26).

normal mental status examination findings.  These same records provide substantial evidence to support the ALJ's evaluation of Dr. Levine's opinion.  Accordingly, the undersigned finds that the ALJ properly evaluated Dr. Levine's opinion, and substantial evidence supports the ALJ's Decision.

### C.      Substantial Evidence Supports the ALJ's RFC Assessment

Lastly, Plaintiff argues that the ALJ's RFC assessment and the underlying hypothetical to the VE were flawed because the ALJ failed to address Plaintiff's limitations resulting from Hashimoto's disease (hypothyroidism).  (ECF No. 20 at 13).

A claimant's RFC is the most a claimant can do despite the limitations caused by her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Social Security regulations classify the physical exertion requirements for work as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567.  Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted).  In the end, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources in determining the RFC.  *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding ALJ's RFC finding that accounted for medical opinions not specifically discussed by the ALJ).

Plaintiff argues, citing to SSR 14-3p, that the ALJ's RFC determination is flawed because it "did not address how Hashimoto's disease may cause severe fatigue because of a hormonal imbalance, limiting an adult's ability to perform work activities on a sustained basis."[16]

---

[16] In relevant part, SSR14-3p provides: The combined effects of an endocrine disorder and another impairment(s) can be greater than the effects of each of the impairments considered separately. We consider all work-related physical and mental limitations, whether due to an adult's endocrine disorder, other impairment(s), or combination of impairments. For example . . . [o]ther endocrine

(ECF No. 20 at 12-13).   According to Plaintiff, although the ALJ found that Hashimoto's disease was a severe impairment at Step 2, the ALJ nonetheless "failed to make clear what limitations were caused by this impairment and whether he accounted for them in the RFC assessment."  *Id.* at 14.  Plaintiff's argument fails for several reasons.

First, in assessing Plaintiff's RFC, the ALJ is not required to address every piece of evidence, so long as his decision sufficiently shows that he "considered the claimant's medical condition as a whole."  *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009). Here, the ALJ's Decision reflects that the ALJ "considered all symptoms and the extent to which these symptoms can reasonably by accepted as consistent with the objective medical evidence and other evidence."  (R.  21).  This statement is supported by the ALJ's thorough discussion of the medical evidence pertaining to Plaintiff's Hashimoto's disease.  *See* (R. 22, 24, 25, 26).  For example, the ALJ discussed the opinion of Dr. Krishamurthi, an impartial medical expert who reviewed Plaintiff's medical records (physical) and testified at the First Hearing.  (R. 22); *see also* (R. 72-75).  As the ALJ noted, "Dr. Krishamurthi testified . . . that the claimant's [other physical impairments and] hypothyroidism and thyroiditis[] led her to be able to do a range of light work . . . ."  (R. 22).   The ALJ found this aspect of Dr. Krishamurthi's opinion persuasive, and used it in determining Plaintiff's RFC.  *Id.*  The ALJ also reviewed Plaintiff's treatment records, including medication regimen (Levothyroxine) and test results showing "positive ANA . . . but not Lupus and no evidence of rheumatoid process."  (R. 24-26); *see also* (Ex. 35F).  Notably, *none* of the

---

disorders, such as **hypothyroidism, may cause severe fatigue because of a hormonal imbalance, limiting an adult's ability to perform work activities on a sustained basis.** Limitations in an adult's functioning associated with an endocrine disorder or a combination of impairments may also result from the effects of treatment, such as hormone replacement medications, or complications that persist despite treatment.  (Emphasis added).

medical records or treatment notes contain *any* functional limitations caused by Hashimoto's disease.

Second, Plaintiff's diagnosis of Hashimoto's disease, without more, does not establish the severity of her impairment or any resulting work-related limitations. *Bryan v. Saul*, No. 19-CV-63164, 2021 WL 707594, at *10 (S.D. Fla. Feb. 6, 2021), *report and recommendation adopted,* 2021 WL 705776 (S.D. Fla. Feb. 23, 2021); *see also Wood v. Astrue*, No. 10-CV-2373-T-17AEP, 2012 WL 834137, at *5 (M.D. Fla. Feb. 14, 2012) (citation omitted), *report and recommendation adopted*, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (concluding diagnosis alone did not amount to functional limitations that would have changed the outcome of the ALJ's decision).

Relatedly, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Burnham v. Berryhill*, No. 16-CV-63013, 2018 WL 1709714, at *12 (S.D. Fla. Mar. 7, 2018); *see also Crawford*, 363 F.3d at 1161; *Denomme v. Comm'r of Soc. Sec.,* 518 F. App'x 875, 879 (11th Cir. 2013) ("[A]n ALJ is not required to instruct the VE to assume conditions that he does not find to exist.") (internal citations omitted); *see also Norman v. Comm'r Soc. Sec.*, No. 14-CV-1498-T-30MAP, 2015 WL 4397150, at *8 (M.D. Fla. July 16, 2015) (the ALJ submits to the expert only those limitations supported by the objective evidence of record) (citations omitted). The hypothetical need only include "'the claimant's impairments,' not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citations omitted). Where, as here, the hypothetical to the VE incorporates a properly determined RFC that is supported by substantial evidence, the hypothetical is proper.[17] *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 894-95 (11th Cir. 2011).

---

[17] Even if the ALJ erred by not specifically addressing Plaintiff's Hashimoto's disease, any error would be harmless because, as Dr. Krishamurthi opined, the RFC included exertional and non-exertional limitations (*e.g.,* limitation to light work; simple, routine, and repetitive work; and no

## VI.   **RECOMMENDATION**

Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 20) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 23) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED** for the reasons set forth above.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.   28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).   Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.   11th Cir. R. 3-1 (2021); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on February 14, 2022.

*Alicia O. Valle*
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of Record

---

exposure to hazards) that would adequately account for Plaintiff's fatigue.  (R. 21, 22); *see Berg v. Saul*, No. 19-CV-60521, 2020 WL 1237044, at *9 (S.D. Fla. Feb. 27, 2020), *report and recommendation adopted,* 2020 WL 1235998 (S.D. Fla. Mar. 13, 2020) (finding error harmless when it would not have affected the ALJ's ultimate determination); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (errors may be harmless if they do not prejudice the claimant).  As Plaintiff's counsel stated during the First Hearing, "[T]his case is more [about] mental versus physical when it comes to the claimant."  (R. 74).